UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10968-RGS

NICOLE SAPIENZA, on behalf of herself and all others similarly situated

v.

ALBERTSON'S COMPANIES, INC., SHAW'S SUPERMARKETS, INC., SAFEWAY, INC., BETTER LIVING BRANDS, LLC, AND LNK INTERNATIONAL, INC.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS

December 2, 2022

STEARNS, D.J.

Nicole Sapienza brought this action against Albertson's Companies, Inc.; Shaw's Supermarkets, Inc.; Safeway, Inc.; Better Living Brands, LLC; and LNK International, Inc. (collectively, defendants). Sapienza seeks to hold defendants liable for allegedly misrepresenting Signature Care acetaminophen gelcap tablets as "rapid release" while advertising, marketing, and selling the tablets.

Sapienza asserts six counts against the defendants: violation of the Massachusetts Consumer Protection Act (CPA), Mass. Gen. Laws ch. 93A

(Count I);[1] breach of express warranty (Count II); breach of implied warranty of merchantability (Count III); unjust enrichment/restitution (Count IV); negligent misrepresentation (Count V); and fraud (Count VI). The court will grant defendants' motion to dismiss all counts.

## BACKGROUND

Sapienza, a citizen and domiciliary of Massachusetts, brought this class action complaint on behalf of herself and a putative nationwide class of individuals who purchased Signature Care-brand over-the-counter acetaminophen gelcap products labeled "rapid release" (Signature Care gelcaps) during the statutes of limitations period for each claim. Defendants variously produce, manufacture, distribute, and sell the Signature Care gelcaps at issue.

Sapienza claims that, although the Signature Care gelcaps are labeled "rapid release," independent testing demonstrates that the products dissolve more slowly than Signature Care non-"rapid release" acetaminophen products, which are lower in price. Compl. (Dkt # 30) ¶¶ 10, 13. She argues that she and the members of the putative class would not have purchased the

---

[1] Sapienza brings Count I on behalf of a Massachusetts subclass, but all others on behalf of the nationwide class.

Signature Care gelcaps at a premium had they not been deceived by the "rapid release" language.

## DISCUSSION

Defendants move to dismiss Sapienza's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The court will dismiss a complaint if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, it determines that the complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the court may take into consideration "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," in addition to the complaint's allegations. *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000), quoting 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (1990).

Defendants contend that Sapienza's claims cannot proceed because they are preempted by the National Uniformity for Nonprescription Drugs provision of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 379r. The court agrees.

The preemption provision of the FDCA reads:

[N]o State or political subdivision of a State may establish or continue in effect any requirement –

3

> (1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title [i.e., an over-the-counter drug, such as the product at issue here]; and
> (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter . . . .

*Id.* § 379r(a). In addition to requirements established under state law, rules established by common law can be considered "requirement[s]" subject to preemption. *See Cipollone v. Liggett Grp.*, 505 U.S. 504, 521 (1992) ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.").

Defendants argue that the FDA has put in place an extensive regulatory scheme that governs the labeling of over-the-counter drugs, including the Signature Care gelcaps, namely through a 1988 tentative final monograph (1988 TFM). *See* Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph, 53 Fed. Reg. 46,204-01 (Nov. 16, 1988). The 1988 TFM has the force and effect of a final monograph because Congress has deemed certain tentative final monographs – including the 1988 TFM – to be final administrative orders. *See* Coronavirus Aid, Relief, and Economic Security Act, 21 U.S.C. § 355h(b)(8)(A).

4

The 1988 TFM establishes the "conditions under which a category of [over-the-counter (OTC)] drugs or specific OTC drugs [including acetaminophen] are generally recognized as safe and effective and not misbranded." 21 C.F.R. § 330.10(a)(7)(i). These conditions include the labeling and disclosure requirements for acetaminophen products. The 1988 TFM also incorporates the dissolution standards for acetaminophen tablets promulgated in the United States Pharmacopeia (USP). *See, e.g.*, 1988 TFM, 53 Fed. Reg. at 46,247 ("Dissolution tests have also become official in the U.S.P. for acetaminophen and aspirin tablets."); *id.* at 46,251 ("Furthermore, the agency is also including by reference the dissolution standard for acetaminophen and aspirin tablets as contained in U.S.P. XXI at page 14."); *id.* at 46,260 (proposing to add a subpart (a) stating "Acetaminophen and aspirin tablets[:] Acetaminophen and aspirin tablets must meet the dissolution standard for acetaminophen and aspirin tablets [] contained in U.S.P. XXI at page 14").

The USP standards identify acetaminophen tablets as "immediate release" when a product dissolves by at least 80% after 30 minutes. Fourth Interim Revision Announcement <7/11> Dissolution, U.S. Pharmacopeia (last revised Nov. 21, 2016), http://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf. Further

FDA guidance identifies acetaminophen tablets dissolving 85% or more within 30 minutes as "rapidly dissolving" and those that dissolve within 15 minutes as "very rapidly dissolving." Waiver of In Vivo Bioavailability and Bioequivalence Studies for Immediate-Release Solid Oral Dosage Forms Based on a Biopharmaceutics Classification System, Guidance for Industry, U.S. Dep't of Health and Human Servs. Food and Drug Admin. (Dec. 2017) at 3 (Immediate Release Guidance).[2]

The testing on which Sapienza rests her claims confirms that the Signature Care gelcaps meet the USP and Immediate Release Guidance dissolution standards. Compl., Ex. A (Dkt # 30-1) at 4 (indicating that the Signature Care gelcaps reached 80% dissolution in 10.9 minutes and 85% dissolution in 12.0 minutes). Because the products comply with the USP and the Immediate Release Guidance standards, Sapienza's claims are preempted insofar that they attempt to augment the existing approved labeling requirement.

---

[2] While the FDA's Immediate Release Guidance is not binding, it provides further gloss on the FDA acetaminophen dissolution standards. Further, this court has found FDA guidance to preempt state-law claims in other instances. *See, e.g.*, *Gustavsen v. Alcon Lab'ys, Inc.*, 272 F. Supp. 3d 241, 252 (D. Mass. 2017); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011) (holding that FDA interpretation is "'controlling unless plainly erroneous or inconsistent with the regulation[s]' or there is any other reason to doubt that they reflect the FDA's fair and considered judgment," quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

Sapienza argues that preemption does not apply because neither the 1988 TFM nor the USP specifically use the term "rapid release" in their standards, only the words "immediate release." But FDA preemption regulates dissolution standards generally - the subject matter of Sapienza's state-law claims - even if the wordings slightly differ. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 137 (E.D.N.Y. 2018), quoting *Canale v. Colgate-Palmolive, Co.*, 258 F. Supp. 3d 312, 322-323 (S.D.N.Y. 2017) ("[I]t is the case here, as it was in *Bowling*, *Johnson*, *Fernandez* and *Canale*, that, 'while the FDA may not have considered the exact language addressed . . . , it had clearly addressed the substance of the claims at issue.'"); *Bimont v. Unilever U.S., Inc.*, 2015 WL 5256988, at *3 (S.D.N.Y. Sept. 9, 2015) (same). Further support for this commonsense interpretation is found in the Senate Report accompanying the bill that established the preemption provision at issue. *See* S. Rep. No. 105-43, at 64 (1997) ("No State or local government is permitted to impose different or additional requirements that relate to the subject matter covered by the three Federal laws as they apply to nonprescription drugs and cosmetics. These include requirements

imposed on product manufacture or composition, labeling, advertising, or any other form of public notification or communication.").[3]

Sapienza cites *Lee v. Conagra Brands, Inc.*, 958 F.3d 70 (1st Cir. 2020), to argue that "rapid release" would need to appear verbatim in the FDA and USP regulations to have preemptive effect. Pl.'s Opp'n (Dkt # 40) at 10-11. At issue in *Lee* was whether an FDA policy governing the labeling of genetically engineered food ingredients would preempt a state-law claim based on the allegedly deceptive use of the phrase "100% natural" to describe a product that contained genetically modified organism (GMO) ingredients. *Id.* at 79-80. As the First Circuit noted, the FDA policy that Conagra relied upon in support of its preemption argument had never become binding, and moreover – "Conagra confuses the FDA's informal policy 'not to restrict the use of the term "natural"' with a rule defining it. *Id.* at 77. Additionally, the alleged deception in *Conagra* was the suggestion that the cooking oil at issue was GMO-free when it was not. Here the issue is not one of nondisclosure

---

[3] While the House Conference Report for the bill stated that the Conference Committee intended for "Little FTC" laws such as the CPA to remain outside the scope of preemption, H.R. Rep. 105-399, at 103 (1997) (Conf. Rep.), courts have still found such laws preempted by the FDCA when the plaintiff's claim fell within a subject the FDA has regulated, *see Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *7, 10-11 (S.D.N.Y. Oct. 28, 2022) (finding plaintiff's New York General Business Law claim that a "non-drowsy" cough medicine label was misleading preempted by the FDCA even where the state law was "one such 'Little FTC' Act").

or a misleading description of the physical properties of the gelcap. They are advertised as rapidly dissolving, which is, by any FDA guidance, accurate. That similar Signature Care products may dissolve just as (or even more) rapidly is no more relevant as a comparison than is a bag of ice labeled "frozen" as opposed to one simply branded as "ice."

Here, the phrase at issue, "rapid release," closely resembles the FDA's standards "immediate release" and "rapidly dissolving" – both of which the Signature Care gelcaps meet. These terms are significantly similar, refer to acetaminophen dissolution rates, and are covered under existing FDA guidance.

To find otherwise would require the FDA to list phrases in every possible permutation of similar words to have preemptive effect. Yet limiting the FDCA's preemptive power in such a way would undermine the latitude Congress gives agencies to have authority over matters in which they have subject matter expertise – here the FDA's responsibility to evaluate and regulate drugs. *See* Alan Untereiner, *The Defense of Preemption: A View from the Trenches*, 84 Tul. L. Rev. 1257, 1262 (2010) ("In many cases, Congress's adoption of a preemptive scheme . . . ensures that the legal rules governing complex areas of the economy or products are formulated by expert regulators with a broad national perspective and needed scientific or

technical expertise, rather than by decision makers—such as municipal officials, elected state judges, and lay juries—who may have a far more parochial perspective and limited set of information."); *cf. Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 758 (9th Cir. 2015) ("[Defendant] then argues that the FDA's failure to issue specific regulations on the subject is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit. This argument proves too much. By this logic, a manufacturer could make any claim—wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific regulation.").[4]

## ORDER

For the foregoing reasons, the defendants' Motion to Dismiss is GRANTED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[4] Sapienza also argues that her claims are not preempted because the 1988 TFM only discusses standards for acetaminophen tablets, and the product at issue is a gelcap. However, gelcaps are tablets and thus are also covered under the 1988 TFM. Compl., Ex. A at 2 (referring to a gelcap as a "gelatin coated tablet"); *id.*, Ex. B (Dkt # 30-2) at 2 (same).